UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Christopher Davis, *et al.*,

    *Plaintiffs,*

v.

Suntrust Farms, LLC, *et al.*,

    *Defendants.*

No. 25 CV 1372

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

This putative class action involves the alleged misclassification of cannabis products under the Cannabis Regulation and Tax Act (CRTA). This court, having recently dismissed a near-identical complaint in *McKenzie v. Progressive Treatment Solutions, LLC, et al.*, again dismisses all claims pursuant to Federal Rule of Procedure 12(b)(6). Where relevant, it reiterates its reasoning from the *McKenzie* dismissal order, summarizing and supplementing its conclusions below. *See McKenzie*, 25 CV 1768, Dkt. 63.

First, the facts.[1] In August 2024, Plaintiff Alan Warneke purchased a 500-milligram "Legacy Live Resin Cartridge Vapable Oil Cartridge" from Earth Med Dispensary. [Dkt. 1, ¶ 111.] Plaintiff Christopher Davis, meanwhile, purchased a one-gram "Legacy LSD Live Badder Vapable Oil" from Ayr Dispensary in November 2024. [*Id.*, ¶ 99.] Both now argue that their purchases ("the Products"), produced by the six Defendants,[2] are worthless. [*Id.*, ¶¶ 108, 120.]

The CRTA divides cannabis products into smokeable products and cannabis-infused products (CIPs). [*Id.*, ¶¶ 59–61 (citing 10 ILCS 705/1-10).] Safety regulations limit the amount of THC in CIPs, but not smokeable products, to 500 milligrams possessed (among Illinois residents) and 100 milligrams sold (in one package). [*Id.*, ¶¶ 70, 78 (citing 10 ILCS 705/1-10, 705/10-10(2)).] The Products—sold at one gram and 500 milligrams, containing upwards of 81% THC—exceed one or both thresholds. [*See id.*, ¶¶ 101, 113.] This, alongside "smoking" warnings, led Plaintiffs to believe the Products were smokeable, since anything else would be unsafe. [*Id.*, ¶¶ 102–05,

---

[1]    The court accepts as true Plaintiffs' well-pleaded allegations and draws all reasonable inferences in their favor. *Thomas v. Neenah Joint Sch. Dist.*, 74 F.4th 521, 522 (7th Cir. 2023).

[2]    Plaintiffs allege that the Defendants—Suntrust Farms, LLC; NPI Hillcrest Investor Group, LLC; KAML, LLC; KAML II, LLC, KAML III, LLC, and KAML IV, LLC—operate as "one entity." [Dkt. 1, ¶ 23.]

1

114–15.] But Plaintiffs now insist that the Products are *not* smokeable; smoking requires combustion, and combustion is not required for vaping. [*Id.*, ¶¶ 62–63.]

Therefore, they reason that the Products are CIPs, and thus worthless.[3] [*Id.*, ¶ 154.] They now raise six claims: violation of the Illinois Consumer Fraud Act (ICFA), common law fraud, fraudulent concealment, breach of express warranty, breach of the implied warranty of merchantability, and unjust enrichment.[4]

\* \* \*

Turning first to statutory and common law fraud, the crux of Plaintiffs' argument is that Defendants deceived them by misrepresenting (and concealing) the statutory classification of their product. [*See id.*, ¶¶ 8–9.] But this is, at most, a misrepresentation of law, turning entirely on how the CRTA interprets terms such as "smoking" and "combustion," and thus how it legally classifies vapes. *See McKenzie*, 25 CV 1768, Dkt. 63, at 8–10 (discussing competing interpretations and observing that any theory of misclassification "requires one to parse both statutory and dictionary definitions"). As reinforced by the Illinois Supreme Court in *McIntosh v. Walgreens Boots All., Inc.*, a misrepresentation of law cannot give rise to fraud claims—whether under the ICFA or the common law. 2019 IL 123626, ¶ 39 ("erroneous conclusion[s] of the legal effect of known facts constitute[] a mistake of law," and so cannot be fraudulent because "all persons are presumed to know the law.")]

Meanwhile, despite protests to the contrary, Plaintiffs cannot sincerely argue that they couldn't discover the facts that determine the Products' classification. *See id.* ¶ 40 (distinguishing cases where defendant "had superior access to the information set forth in the [] ordinance or that [plaintiff] could not have discovered what the ordinance required through the exercise of ordinary prudence"). Here, Plaintiffs do not seem to argue that Defendants misrepresented that the Products are Vapable Oils, alleging that they do "market[] them simply as 'vapes.'" [Dkt. 1, ¶ 86.] They also affirmatively allege the "functionally similar, if not identical" means by which Vapable Oils operate, and then apply that understanding to argue that they

---

[3]   Defendants contend that Plaintiffs' theory of injury is that they purchased an unlawful product—not that they purchased an unusable one. [Dkt. 45, at 18–20.] Here, as compared to *McKenzie*, the complaint does emphasize legality concerns over safety ones. [Dkt. 1, ¶¶ 102, 108, 114, 120.] Still, the court believes it a reasonable inference that these Plaintiffs believed the Products unsafe and unusable, too. [*See id.*, ¶¶ 149 ("unlawful and dangerous"), 154 ("unsafe and unlawful"), 173 ("marketed … [as] lawful for an individual to possess in many instances (they are not), and not unnecessarily dangerous (they are)").] Defendants' arguments that rest on the Products' legality are thus insufficient for dismissal.

[4]   They agree to dismiss their Uniform Deceptive Practices Act claim. [Dkt. 44, at 2 n.1.]

are CIPs.[5] [*Id.*, ¶¶ 3, 44–47, 62–63.] This is not, as Plaintiffs insist, a situation where "classification … depends on the intent of Defendants, which remains hidden within Defendants' internal decision making, documents, and communications." [Dkt. 44, at 10–11.[6]] Plaintiffs know the products are Vapable Oils, and from there engage only in statutory interpretation and application.

Counts I, II, III, and IV are therefore dismissed.[7] And "when the plaintiff's particular theory of unjust enrichment is based on alleged fraudulent dealings and [a court] reject[s] the plaintiff's claims that those dealings, indeed, *were* fraudulent, the theory of unjust enrichment that the plaintiff has pursued is no longer viable." *Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 855 (7th Cir. 2007). Count VII thus fails, too.

---

[5] Plaintiffs each filed a near-identical lawsuit alleging they purchased comparable products *before* making the purchases in this action. Defendants request—and this court agrees—to take judicial notice of these complaints, as well as of an Illinois Department of Agriculture list of licensed cannabis cultivation centers (accessible via the Department's website). [Dkt. 48.] Judicial notice is permitted for each. *See In re FedEx Ground Package Sys., Inc., Emp. Pracs. Litig.*, 2010 WL 1253891, at *4 (N.D. Ind. Mar. 29, 2010) (citing *Opoka v. Immigration & Naturalization Service*, 94 F.3d 392, 395 (7th Cir. 1996)) (permitting notice of "filings in other proceedings to establish the fact of such litigation and related filings"); *Uncommon, LLC v. Spigen, Inc.*, 305 F. Supp. 3d 825, 840 n.4 (N.D. Ill. 2018), *aff'd,* 926 F.3d 409 (7th Cir. 2019) (permitting notice of "government documents, including those available from reliable sources on the Internet"). Accordingly, Defendants insist this dooms at least the IFCA claim since "those who 'kn[o]w the truth' do not have valid ICFA claims because they cannot claim to be deceived." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (citing *Oliveira v. Amoco Oil Co.*, N.E.2d 151, 164 (Ill. 2002)). However, because the misrepresentation is one of law, and not fact, actual knowledge of any "truth" is necessarily established only if these actions were *filed* before—or if Plaintiffs' pursuit of their legal theory otherwise predated—their purchases. Still, even without evidence of Plaintiff's actual knowledge, "all persons are presumed to know the law," and so the fraud claims fail for a similar reason. *McIntosh*, 2019 IL 123626, ¶ 39–40 ("[b]ecause [plaintiff] is charged with knowledge of the law, he cannot claim to have been deceived").

[6] Citations to docket filings generally refer to the electronic pagination provided by CM/ECF, which may not be consistent with page numbers in the underlying documents.

[7] Defendants observe that the Illinois Cannabis Acts are not among those enumerated in Section 2Z of the ICFA, which establishes automatic violations of the ICFA when the listed statutes are violated. [Dkt. 41, at 15 (citing 815 ILCS 505/2Z).] But plaintiffs may still "independently state an ICFA claim if the elements are sufficiently pleaded." *Beatty v. Accident Fund Gen. Ins. Co.*, 2018 WL 3219936, at *13 (S.D. Ill. July 2, 2018); *Whittler v. Midland Funding, LLC*, at *2 (N.D. Ill. May 27, 2015). To that end, the court believes it more appropriate to decide, at this stage, claims of fraud on the law-versus-fact distinction, rather than performing the more fact-intensive inquiry of what might deceive or mislead a reasonable consumer. *See Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 478 (7th Cir. 2020).

As to warranties, Plaintiffs do not allege that the product labels are false, i.e. that the amount or potency is wrong, or that smoking is not hazardous to health. Instead, they allege that these representations are inconsistent with the statutory requirements for CIPs. [Dkt. 1, ¶¶ 101–05; 113–117.] That's insufficient for a breach-of-express warranty claim, because "the language of the warranty itself is what controls and dictates" the scope of the warranty. *Rosenstern v. Allergan, Inc.*, 987 F. Supp. 2d 795, 805 (N.D. Ill. 2013).

Both breach-of-warranty claims also fail because Plaintiffs do not allege privity with Defendants, conceding that they purchased their products from independent dispensaries. [Dkt. 1, ¶¶ 99, 111, 228, 246.] *See also Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 974–75 (N.D. Ill. 2025) ("privity requirement means that only the immediate seller can be sued"). Instead, Plaintiffs raise the direct-dealing and third-party beneficiary exceptions to the privity requirement. [*Id.*, ¶¶ 228, 246; Dkt. 44, at 20.] But "website representations, warranties, … labeling and marketing" do not give rise to direct dealings. *Miller v. Emerson Elec. Co.*, 2025 WL 964905, at *5 (N.D. Ill. Mar. 31, 2025) (observing that these "are just the ordinary general communications between manufacturers and consumers, not specific, direct communications"); *Gurrola*, 774 F. Supp. 3d at 976 (observing that most courts decline to follow such a "loose formulation of the direct-dealing exception"). Similarly, under the third-party beneficiary exception, Defendants must know of Plaintiffs' identity and purpose, and not, as alleged here, "just the *general* identity, purpose, and requirements for consumers *en masse.*" *Miller*, 2025 WL 964905, at *5 (emphasis in original).

Finally, Illinois law requires Plaintiffs to provide pre-suit notice of warranty breaches to Defendants, or to otherwise establish Defendants' actual knowledge of the claims. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 590 (Ill. 1996)). Plaintiffs argue only that Defendants had "actual knowledge [] that their Vapable Oils were unlawful, and failed to conform to the [] representations and warranties." [Dkt. 1, ¶¶ 232, 249.] But the requisite knowledge is "not of the facts … but of *buyer's claim* that they constitute a breach." *Connick*, 675 N.E.2d at 590 ("even if a manufacturer is aware of problems with a particular product line, the manufacturer [must] somehow [be] apprised of the trouble with the particular product purchased by a particular buyer"). This is consistent with the notice requirement's goal of "encourag[ing] pre-suit settlement negotiations." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1054 (N.D. Ill. 2022) (citing U.C.C. 2-607 cmt. 4). No allegations plausibly suggest Defendants had actual knowledge of these particular transactions. This, too, is inescapably fatal to Counts V and VI.

5

* * *

For the foregoing reasons, the motion to dismiss is granted. Because amendment would be futile as to Counts V, and VI, i.e., the breach-of-warranty claims, they are dismissed with prejudice. The remaining counts are dismissed without prejudice.

Enter: 25-cv-1372
Date:  March 6, 2026

_____
Lindsay C. Jenkins